United States District Court
Southern District of Texas
**ENTERED**
October 04, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RANDY WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-100 |
| | § | |
| CANDACE MOORE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASE

This civil rights action was filed by a Texas state prisoner, Randy Williams, pursuant to 42 U.S.C. § 1983. Plaintiff is challenging as unconstitutional a prison disciplinary case that he received for allegedly filing fraudulent liens against TDCJ personnel. Following a disciplinary hearing, Plaintiff lost earned good time credits, he was placed in more restrictive housing, his time earning classification was reduced, and he lost other privileges, such as recreation and commissary. (D.E. 1).

Pending is Defendants' motion to dismiss Plaintiff's lawsuit pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 15). For the reasons stated herein, Defendants' motion is granted, and Plaintiff's claims are dismissed with prejudice.

## I.      JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties (D.E. 28, 30), this case was re-assigned to the

undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment.  (D.E. 31).  *See* 28 U.S.C. § 636(c).

## II.    BACKGROUND PROCEEDINGS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined at the McConnell Unit (MCU) in Beeville, Texas.  He is serving two (2) life sentences with no possibility of parole for aggravated kidnapping and aggravated sexual assault, both out of Nueces County, Texas.[1]

In this lawsuit, Plaintiff is challenging an April 20, 2015 disciplinary hearing held at the MCU, Disciplinary Case No. 20150232309.   In that disciplinary case, Defendant Candace Moore charged Plaintiff with filing false liens against TDCJ personnel.  Thereafter, Captain Gonzales, acting as the disciplinary hearing officer, found Plaintiff guilty as charged.  Plaintiff appealed the disciplinary conviction but Warden Putnam affirmed the conviction at Step 1, and it was upheld at Step 2.  Plaintiff claims that Regional IV Director P. Chapa failed to investigate his claim.

On March 23, 2016, Plaintiff filed his original complaint and named the following individuals/entities as Defendants: (1) Candace Moore, MCU law librarian; (2) Captain Gonzales, disciplinary hearing officer; (3) Kenneth Putnam, assistant warden; (4) P. Chapa, Region IV Director; and (5) the TDCJ.  (D.E. 1, p. 4).

On April 13, 2016, service was ordered on Defendants.  (D.E. 5).

---

[1] *See Williams v. State,* 851 S.W.2d 282 (Tex. Crim. App. 1993) (en banc).

On April 14, 2016, Plaintiff filed Memoranda in Support of his original complaint. (D.E. 6, 8).

On April 27, 2016, Defendants filed their motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), Fed. R. Civ. P. (D.E. 15), and on May 4, 2016, they filed a supplement to their motion to dismiss.  (D.E. 16).  On May 18, 2016, Defendants filed a motion for protective order.  (D.E. 17).

Following an extension of time (D.E. 24), on September 12, 2016, Plaintiff filed a response in opposition to Defendants' motion to dismiss.

## III.   PRIOR LAWSUIT AND CURRENT ALLEGATIONS.

### A.   Previous lawsuit.

On March 6, 2013, Plaintiff filed a lawsuit, C.A. No. 2:13-cv-061, alleging that certain MCU officials violated his First Amendment rights by refusing to let him dispose of certain documents and papers that he had received previously via the mail without incident, but had subsequently been seized by MCU officials.  (*See* C.A. No. 2:13-cv-061, D.E. 1). Plaintiff requested that the defendants in that case deliver the documents to his mother, but defendants refused to do so based on their determination that the "information was used for fraudulent schemes."[2]  Plaintiff testified that some of the documents were related to his personal finance and establishing a trust for his mother's estate.   Other documents concerned potential civil rights claims Plaintiff might have regarding DNA and his criminal

---

[2] For the last few years, the TDCJ-CID has been addressing the problems caused by inmates filing fraudulent financial liens with the Secretary of State's office against TDCJ employees.  (*See* D.E. 17-1, pp. 3-4).  Inmates found guilty of engaging in this activity are subject to disciplinary charges that may lead to the loss of good time credits, as well as a transfer to less-favorable housing, and the loss of other privileges.  In addition, inmates are subject to felony charges under Texas state law.  *See* Texas Penal Code § 37.101 (D.E. 17-1, p. 2). .

conviction.   Regardless, Plaintiff claimed that he had received the documents while incarcerated and had them in his possession for some time. However, between July and September 2012, MCU officials seized 31 documents totaling approximately 96 pages.  In response, Plaintiff began filing I-60 requests to Ms. Collins in the mailroom asking that she forward the seized materials to his mother.   Ms. Collins, together with the Director's Review Committee, denied Plaintiff's request on three separate occasions on the finding that the documents or information therein could be used in "fraudulent schemes."'

On March 6, 2013, Plaintiff filed a letter with this Court identifying the 31 documents and requesting a show cause order why Ms. Collins should not be liable to Plaintiff and his mother for denying the documents.  (C.A. No. 2:13-cv-061, D.E. 1).  The requested documents included UCC-1 forms, financing agreements, and 2012 tax forms, as well as correspondence with the treasury of Puerto Rico.  *Id.*

By Order of Dismissal entered April 23, 2013, the Court dismissed Plaintiff's First Amendment claims regarding the documents noting that the MCU "has recognized a problem with inmates and fraudulent schemes committed through the mail system." (C.A. No. 2:13-cv-061, D.E. 15, p. 7).  The Court held that this was the type of situation addressed by *Turner v. Safely,* 482 U.S. 78 (1987) and found the stated restriction was justified by a legitimate governmental interest in maintaining security and preventing crimes.  Plaintiff appealed and the Fifth Circuit affirmed this Court's dismissal of Plaintiff's action for failure to state a claim.  (C.A. No. 2:13-cv-061, D.E. 27).

**B.    Instant claims.**

In the instant lawsuit, Plaintiff is complaining about documents that were seized from another inmate, Inmate Karl Anthony Hodson, and for which Plaintiff then received a disciplinary case for presenting fraudulent documents. Plaintiff relates that on April 14, 2015, Ms. Moore and Officers Jacaway and Martinez searched Inmate Hodson's cell.  (D.E. 1, ¶ 26).  Ms. Moore and the officers discovered legal documents that had *Plaintiff's* name on them, including tax forms, a letter to the Corpus Christi District attorney, a letter to the IRS in Charlotte, North Carolina, Nueces County indictments, a Durable Power of Attorney, a letter to the U.S. Treasury, and a Freedom of Information Act (FOIA) request to the IRS.  (D.E. 1, ¶ 29).  (*And See* D.E. 19, pp. 1-23, Confiscated Fraudulent Financial Documents).  The documents were seized as contraband.

The next day, on April 15, 2015, Plaintiff was served with a disciplinary case, Case No. 20150232309, in which he was charged as follows:

> On the date [4/15/15] and time [8:00 AM] listed above, and at ML Law Library, Offender Williams, Randy, TDCJ-ID No. 00401747, did knowingly present for filing or caused to be presented for filing financial statement(s) that the person knows (2) contains a material false statement and or (3) is groundless with the intent to defraud or harm another.  The offense is a State Jail Felony in accordance to Penal Code Sec. 37.101 Fraudulent Filing of Financing Statements.  The offense code is a 10.0.

(D.E. 1, ¶ 33).

On April 17, 2015, Plaintiff met with his substitute counsel.  (D.E. 1, ¶ 37).  Plaintiff explained that:

> -the tax documents were illegally confiscated from Karl A. Hodson's property;
> -none of the documents were found in his possession;
> -none of the documents had been presented to anyone;

-since the documents were seized on April 14, 2015, they could not have been
 presented to Candace Moore on April 15, 2015, as charged;
-he was not in the law library on April 15, 2015;
-there is no victim because there is no UCC-1 financing statement.

(D.E. 1, ¶ 38).

On April 20, a disciplinary hearing was conducted at which Captain Gonzales presided as the disciplinary hearing officer (DHO).  (D.E. 1, ¶ 42).  Plaintiff was denied the right to call his work supervisor, Ms. Villarreal, to testify that he was not in the law library on April 15, 2015.  Ms. Moore testified that it was her belief that Karl J. Hodson was directing both his son and Plaintiff on how to file liens against officers at the MCU.  DHO Gonzales found Plaintiff guilty, and as punishment, Plaintiff lost 180 days good time; his contact visits were suspended for 3 months; and he lost 45 days recreation, commissary, personal property, and access to phone.  (D.E. 1, ¶ 60).

On April 22, 2015, Plaintiff went before a Unit Classification Committee (UCC).  He was reassigned to disciplinary segregation, closed custody.  (D.E. 1, ¶ 63).

On an uncertain date, while Plaintiff was in a holding cage outside of ad. seg. waiting for his new punitive housing assignment, Plaintiff had the opportunity to speak to Assistant Warden Furr who had sat on previous UCCs for Plaintiff.  (D.E.1, ¶ 67).  Plaintiff complained about the disciplinary case, UCC hearing, and punitive classification, and Warden Furr said he would look into the matter.  Later that day, Officer Wilson advised Plaintiff that he had been "upgraded" per Warden Furr to G5.  (D.E. 1, ¶ 68).  Karl A. Hodson learned of Plaintiff's upgrade and complained.  *Id.*

As a G5 inmate, Plaintiff is living in segregated, punitive housing.  He claims that he is forced to be near psychiatric patients, is limited to five showers per week, and the

conditions are filthy.  (D.E. 1, ¶ 71).  Plaintiff has acquired a toe nail fungus due to the unclean showers.  (D.E. 1, ¶ ¶ 97-98).

On November 24, 2015, Plaintiff filed a Step 1 grievance complaining about the disciplinary case and punishments.  (D.E. 1, pp. 65-66).  On January 5, 2016, Warden Putnam denied Plaintiff's Step 1 grievance.  (D.E. 1, p. 66).

On January 21, 2016, Plaintiff filed a Step 2 appeal.  (D.E. 1, pp. 67-68).  On February 2, 2016, Kelli Ward denied the Step 2 appeal.  (D.E. 1, p. 68).

Plaintiff claims that Defendants committed the following constitutional violations:

A.    Failure to provide equal protection of the law.  (D.E. 1, ¶ ¶ 110-119);
B.    RlUIPA Violations.  (D.E. 1, ¶ ¶ 120-131);
C.    Due process violation by illegal search and seizure.  (D.E. 1, ¶ ¶ 132-143);
D.    Denial of access to the courts.  (D.E. 1, ¶ ¶ 144-156);
E.    Retaliation.  (D.E. 1, ¶ ¶ 157-173);
F.    Violations of *Wolff* due process at disciplinary hearing.  (D.E. 1, ¶ ¶ 170-173);
G.    Due process violations by false allegations.  (D.E. 1, ¶ ¶ 174-191);
H.    Due process violations by spoliation.  (D.E. 1, ¶ ¶ 192-220);
I.    Failure to follow TDCJ rules and regulations.  (D.E. 1, ¶ ¶ 213-220);
J.    Unconstitutional conditions of confinement.  (D.E. 1, ¶ ¶ 221-237);
K.    Violations of Texas state law- (D.E. 1, ¶ ¶ 238-248);
L.    Violations of state civil rights.  (D.E. 1, ¶ ¶ 249-253); and
M.    Criminal responsibility for the conduct of another.  (D.E. 1, ¶ ¶ 254-257).

## IV.   LEGAL STANDARD.

Defendants move to dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure.  (D.E. 15, 16).

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). Courts may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone;

(2) the complaint supplemented by undisputed facts in the record; or (3) the complaint, supplemented by undisputed facts, plus the court's resolution of disputed facts. *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986).   When subject matter jurisdiction is challenged, the plaintiff has the burden of demonstrating that subject matter jurisdiction exists. *Huff v. Neal,* 555 Fed. Appx. 289, 296 (5th Cir. Jan. 27, 2014), citing *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

Under Rule 12(b)(6), a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  In *Bell v. Atlantic Corp v. Twombly,* 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678, quoting *Twombly, supra.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).   Further, "[a] document filed *pro se* is 'to be liberally construed' … and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafter by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft,* 556 U.S. at 678 (internal quotation marks omitted).

When ruling on a motion to dismiss in a case filed by a *pro se* plaintiff, a district court may consider documents attached to the plaintiff's Complaint and those materials subsequently filed.   *Howard v. King,* 707 F.2d 215, 220 (5th Cir. 1983).   *See also Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) (in the context of a defendant's motion to dismiss, district court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims).   *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004); *Clark v. Huntleigh Corp.,* 119 Fed. Appx. 666, 667 (5th Cir. 2005) (finding that because of the plaintiff's *pro se* status, "precedent compels us to examine all of his complaint including the attachments).

## IV.   DISCUSSION.

### 1.   Eleventh Amendment immunity and official capacity claims.

Plaintiff is suing Defendants in their official and individual capacities.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).   As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v._Graham*, 473 U.S. 159, 166 (1985).  Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Plaintiff claims he is suing the TDCJ for monetary and injunctive relief.  However, the TDCJ, as an agency of the State of Texas, is immune from suit under the Eleventh Amendment, and accordingly, Plaintiff's claims against the TDCJ are dismissed with prejudice.  (*See Cox v. Texas,* 354 Fed. Appx. 901, * 1-2 (5th Cir. 2009) (Eleventh Amendment immunity applies to all suits brought against States and their agencies regardless of the relief sought).   To the extent Plaintiff is suing Ms. Moore, Captain Gonzales, Warden Putnam, and/or Assistant Director P. Chapa in their official capacities for money damages, those claims similarly are barred by the Eleventh Amendment, and as such, they are dismissed with prejudice.

**2.     Plaintiff's claims.**

**A.     Equal protection claim.**

Plaintiff claims that Ms. Moore and Captain Gonzales deprived him of the equal protection of the law because Ms. Moore wrote disciplinary cases for possessing false financial statements against mainly Jewish inmates as demonstrated by his chart found at D.E. 1, p. 16. § § 72-73.  (D.E. 1, p. 20, § 116).

The Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons similarly situated be treated alike.  *See Stefanoff v. Hays County,* 154 F.3d 523, 525-26 (5th Cir. 1998) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)). A state actor violates the Equal Protection Clause when he or she treats one set of persons differently from others who are similarly situated.  *See Yates v. Stadler,* 217 F.3d 332, 334 (5th Cir. 2000) (citing *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999).

To establish an equal protection claim, a plaintiff must allege (1) that the defendant created two or more classifications of similarly situated prisoners that were treated differently, and (2) that the classification had no rational relation to any legitimate governmental objective.  *See Stefanoff,* 154 F.3d at 526 (citing *Johnson v. Rodriguez,* 110 F.3d 299, 306-07 (5th Cir. 1997), *cert. denied*, 522 U.S. 995 (1997)).  In deciding whether similarly situated individuals have been treated differently, the court examines "whether the plaintiffs are similarly situated to another group for purposes of the challenged government action." *Yates,* 217 F.3d at 334.

Accepting Plaintiff's allegations as true, he fails to establish how Defendants treated him differently from other similarly situated inmates.  Indeed, all inmates are subject to cell

searches, and all inmates are subject to seizure of any and all documents that contain or relate to U.C.C. filings.  As to Ms. Moore, Plaintiff does not claim that she refused to write a disciplinary case to non-Jewish offenders who committed the same violations as Plaintiff and the other Jewish offenders listed on his chart.  And as to Captain Gonzales, Plaintiff fails to state facts that meet the necessary elements to state a cause of action.  Plaintiff does not claim that Captain Gonzales refused to hold a disciplinary hearing for a non-Jewish offender who was written a disciplinary case or even dismissed a disciplinary case for a non-Jewish offender who had violated prison rules for the same offense as Plaintiff. Accepting Plaintiff's statements as true regarding the disciplinary punishments and religious faith listed in § 72, the fact that there are variances in the punishments within that group of offenders is not sufficient to rise to the level of an equal protection claim.

### B.    RLUIPA Violations.

Plaintiff alleges that his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) were violated by Defendants because, after he was charged with filing false financial statements, his classification was reduced to G5, such that he was no longer permitted to congregate with other Messianic Jews.  Plaintiff also alleges that Ms. Moore "targeted" Messianic Jews in regards to fraudulent lien disciplinary cases.  *Id.*

> With respect to its protection of institutionalized persons, the RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

> (A)  is in furtherance of a compelling governmental interest; and

>     (B)   is   the   least   restrictive   means   of   furthering   that   compelling
>     governmental interest.

42 U.S.C. § 2000cc-1(a).   The Act broadly defines "religious exercise" to include "any

exercise of religion, whether or not compelled by, or central to, a system of religious belief."

*Id.* § 2000cc-5(7)(A).   Under the RLUIPA, the plaintiff bears the burden to prove that the

challenged law, regulation or practice substantially burdens his exercise of religion.   Once a

plaintiff has made this *prima facie* showing, the defendant bears the burden to prove that the

challenged regulation is the least restrictive means of furthering a compelling governmental

interest.  *Id.,* § 2000cc-2(b).  *And see Sossamon v. Texas,* 131 S. Ct. 1651 (2011).

The RLUIPA is a prohibition against *government* regulation, law or policy.   To the

extent Plaintiff is suing Defendants in their individual capacities for alleged RLUIPA

violations, those claims are not actionable.   *Sossamon v. Lone Star State of Texas,* 560 F.3d

316, 329 (5th Cir. 2009) *aff'd sub. Nom. Sossamon v. Texas,* 131 S. Ct. 1651 (2011) (an

action under RLUIPA does not exist for individual capacity claims).   Moreover, Plaintiff is

complaining about a one-time search of his cell and alleges that it somehow  placed a

substantial burden on his religious exercise.   He does not claim that he missed a worship

session or prayer opportunity, or that the search in any way interfered with his religious

practice.   His conclusory allegation fails to state a RLUIPA violation or First Amendment

claim against Defendants, and therefore these allegations are dismissed with prejudice.

## C.   Illegal search and seizure.

Plaintiff claims that Ms. Moore illegally searched Karl A. Hodson's cell and

confiscated Plaintiff's legal papers and forms violating his First, Fourth, Sixth and

Fourteenth Amendment rights.[3]  (D.E. 1, ¶¶ 132-143).  In particular, Plaintiff complains that Ms. Moore decided to search Inmate Karl A. Hodson's cell because of correspondence she had received from Karl J. Hodson, which mentioned Plaintiff and also discussed the "sovereign citizens" movement.  (D.E. 1, ¶ 136).  Plaintiff complains that Ms. Moore was not authorized to seize property from Karl A. Hodson's cell because: (1) she is not a correctional officer; (2) she is not on the contraband team; (3) she did not have the proper paperwork (4) and she failed to return seized items that were not deemed contraband. (D.E. 1, ¶. 136).

Plaintiff does not have a protected liberty interest in not having *his* cell or property searched, so he certainly does not have a protected interest in not having the cell of another inmate searched, regardless of whether he has given him property or not.  *See Hudson v. Palmer,* 468 U.S. 517, 526 (1984) (prisoners have no Fourth Amendment expectation of privacy in their cells).

In *Hudson,* Chief Justice Burger, writing for the majority, discussed cell searches:

We hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment prescription against unreasonable searches does not apply within the confines of a prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Id.,* at 526.  *Hudson* precludes any Fourth Amendment claim by Inmate Hodson.

Plaintiff also complains that his Fourteenth Amendment rights have been denied by the refusal to return the stacks of legal documents that were seized.  In *Hudson,* the Court

---

[3] Plaintiff does not explain how his First and Sixth Amendment rights are implicated in this specific alleged violation. Accordingly, because he has failed to set out the necessary elements for these particular claims, they are dismissed as a matter of law.

held that an unauthorized intentional deprivation of property by a state employee does not constitute a violation to the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy. *Hudson,* 468 U.S. at 533; *Marshall v. Norwood,* 741 F.2d 761 (5th Cir. 1984). In *Lewis v. Woods,* 848 F.2d 649, 652 (5th Cir. 1988), the Fifth Circuit held that the state could afford an inmate due process by providing a post-deprivation remedy for the redress of an unforeseeable, unauthorized injury. *See id.* at 652 (dismissing without prejudice for failure to state a constitutional violation inmate's claim that prison officials took his radio and amplifier from the cell of his fellow inmate and did not return it). Texas courts have acknowledged that the prison grievance system is one post-deprivation remedy. *See e.g. Pedraza v. Tibbs,* 826 S.W.2d 695 (Tex. App. – Houston [1st Dist.] 1992, writ dism'd w.o.j.).

In addition, Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins,* 26 F3d 541, 543 (5th Cir 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss,* 568 S.W.2d 413, 420-21 (Tex. Civ. App.—San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). State law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, Plaintiff's loss of his personal property does not state a claim under the Due Process Clause. *See Hudson,* 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy).

A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele,* 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers,* 709 F.3d at 94. Plaintiff has not filed suit in state court pursuant to § 501.007 or for conversion. Because Plaintiff has not pursued his state court remedies he cannot allege that the post-deprivation remedy available to him is inadequate. As such, Plaintiff's claim for property loss fails to state a cognizable constitutional claim, and it is dismissed with prejudice.

D.    **Denial of access to the courts.**

Plaintiff argues that the seizure of his legal materials from Karl A. Hodson's cell by Ms. Moore constitutes a denial of access to the courts. (D.E. 1, ¶¶ 144-156). Plaintiff claims that these are part of his legal documents and the "actual injury" suffered is the "reading" of the documents. (D.E. 1, ¶ 148). He claims that some of the seized papers were a proposed § 1983 action against Warden Putnam that Plaintiff was assisting Inmate Karl Hudson to prepare, and other documents were copies of pleadings filed by the Innocence Project concerning his original criminal convictions. (D.E. 1, ¶ 149).

Access to the courts is a fundamental constitutional right placing certain obligations on the part of prison and jail official to assist inmates in realizing that right. *Bounds v. Smith,* 430 U.S. 817, 828 (1977). However, actual injury must be shown to establish a *Bounds* claim. *See Lewis v. Casey,* 518 U.S. 343 (1996); *Mann v. Smith,* 796 F.2d 79, 84 (5th Cir. 1986). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement). Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant

was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Here, Plaintiff has no constitutional right in assisting another inmate in filing a lawsuit against Warden Putnam concerning events that occurred at the Hughes Unit. Moreover, a review of the seized documents reveals that these documents are exactly the type of material that the TDCJ has mandated be seized and not returned to prisoners. (*See* D.E. 19, Confiscated Contraband Financial Documents). The documents involve the Payor (Plaintiff), informing the IRS that an individual or individuals, the alleged Payees, have been paid taxable interest from a bond or long-term debt instrument on Form 1099 OID, making the individuals liable for taxes owed to the IRS, when the individuals involved have never received money from the Payor. The seized documents are considered contraband by the TDCJ-CID and therefore cannot form the basis of a legitimate First Amendment claim. This claim is dismissed with prejudice as frivolous.

### E.    Retaliation.

Plaintiff argues that Defendants Moore and Gonzales retaliated against him by concocting false charges, depriving him of legal papers and evidence in a separate legal matter involving Warden Putnam, and depriving him of a fair hearing in retaliation for Plaintiff filing prior grievances and assisting the Hodson's and other prisoners with their legal matters  (D.E. 1, ¶ ¶ 157-173). Plaintiff argues that assisting other inmates in filing lawsuits is a "protected right" and that Ms. Moore and Captain Gonzales violated that right by finding him guilty at his disciplinary hearing.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972).  Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).  It is well-settled that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts."  *Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, *1 (5th Cir. Jul. 12, 2010) (unpublished), citing *Wood*, 60 F.3d at 1166.  In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights.  *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.  *Id*.  For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act.  *Id.* at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing  *McDonald v. Stewart*, 132 F.3d 225, 231 (5th

Cir. 1998).  An inmate must allege more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

Taking as true Plaintiff's allegations, he fails to state a claim of retaliation against Ms. Moore or Captain Gonzales.  The uncontested evidence shows that Inmate Karl A. Hodson's cell was searched, illegal documents belonging to Plaintiff were found, and Plaintiff was charged with possessing contraband.  (D.E. 1, ¶ 165, D.E. 19).  According to Plaintiff, in addition to the seized documents filed under sealed at D.E. 19, the seized documents also included a lawsuit, C.A. No. 2:13-cv-061, state court litigation that Plaintiff had prepared with offenders Joe Young and Fred Hoffman against Gonzales, Chapa, and Moore, and Karl J. Hodson's Power of Attorney for Plaintiff.  (D.E. 1, ¶ 165). Case No. 2:13-cv-061 is the action in which Plaintiff complained that prison officials failed to dispose of seized property as he requested in violation of his First Amendment rights.  That action was closed for failure to state a claim and as frivolous on April 23, 2013, and the dismissal was affirmed on appeal.  (*See* Case No. 2:13-cv-061 at 15, 27).  There is no chronology of events showing that Defendants responded to any particular action of Plaintiff with retaliation.  His present dispute with Moore and Gonzales did not arise until after the April 14, 2015 search of Hodson's cell.  This does not support a chronology of events from which retaliation can be inferred.  The mere fact that Inmate Hodson's cell was searched as a consequence of Karl J. Hodson's identifying himself as Plaintiff's Power of Attorney does not demonstrate retaliation for Plaintiff exercising a constitutional right.  Thus, Plaintiff's retaliation claim is dismissed with prejudice.

### F.    Denial of *Wolff* due process protections.

Plaintiff's main complaint in this lawsuit is that he was served with a disciplinary case for filing false liens and was found guilty of those charges, and as a consequence thereof, he lost good time credits, privileges, and his classification was reduced such that he has less freedoms within the prison.   Plaintiff argues that the disciplinary hearing was invalid because he was not afforded the due process protections required by *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974) (due process mandates notice and an opportunity to present contrary evidence).   However, Plaintiff cannot seek § 1983 damages for an allegedly unconstitutional conviction unless or until he has had the disciplinary conviction set aside or vacated.   *Edwards v. Balisok,* 520 U.S. 641, 645-647 (1997).   Plaintiff appealed his disciplinary conviction, but it was upheld at Step 1 by Warden Putnam and at Step 2 by P. Chapa.   (D.E. ¶ 77 ¶ 87).   Plaintiff did not file a state or federal writ of habeas corpus. Plaintiff cannot challenge the disciplinary conviction proceeding in this § 1983 action because, were he to prevail, it would in theory entitle him to a speedier release such that this claim must be brought in a habeas corpus proceeding.   Accordingly, his claims that he was denied *Wolff* protections are not cognizable in this proceeding, and are dismissed for failure to state a claim.

### G.    False allegations.

Plaintiff is suing Defendants in their individual capacities for money damages claiming that he was denied due process because he was charged with a false disciplinary case and then wrongfully punished.   Plaintiff maintains that the seized paperwork was blank and did not reflect that it had ever been presented for filing.

First, Plaintiff fails to state a cognizable § 1983 claim based on his allegation that the disciplinary case filed against him was false. *Castellano v. Fragozo,* 352 F.3d 939, 945 (5th Cir. 2003). Moreover, his claim that he lost certain prison privileges such as recreation, commissary, and telephone, does not invoke due process protections because the loss of these privileges do not affect the fact or duration of Plaintiff's sentence *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995).

More importantly, as noted above, Plaintiff cannot maintain a claim for § 1983 damages unless or until the challenged disciplinary conviction has been set aside or vacated on appeal or in a habeas corpus proceeding. *Heck v. Humphrey*, 512 U.S. 477, 498 (1994). In *Heck,* the Supreme Court held that "in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentences has been [overturned]." *Heck,* 512 U.S. at 486-87. The Fifth Circuit has explained that "[i]t is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted....'" *Bush v. Strain,* 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck,* 512 U.S. at 486-87). The *Heck* doctrine also operates to bar prisoners from challenging the punishment imposed by a disciplinary proceeding through a § 1983 action. *See Edwards,* 520 U.S. at 648 ("[plaintiff's] claim for declaratory relief and money damages, based on allegations … that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder,* 154 F.3d 186, 189-91 (5th Cir 1998) (*en banc*) (applying *Heck* to

bar plaintiff's constitutional claims that were fundamentally intertwined with his request for restoration of good time credits). Plaintiff's disciplinary case has not been overturned and his claims against Ms. Moore, Captain Gonzales, Warden Putnam, and Director Chapa are directly related to the disciplinary case. Therefore, Plaintiff's claims against Defendants concerning his disciplinary conviction and the punishments he received are barred by *Heck*.

### H.    Spoilation.

Plaintiff claims that he was denied due process by spoliation of the disciplinary record. This claim, however, consists of Plaintiff's objections to the manner in which Captain Gonzales conducted the disciplinary hearing. (D.E. 1, ¶¶ 192-220). Again, under *Heck,* these claims must be pursued in a habeas corpus proceeding, and they are accordingly dismissed with prejudice.

### I.    Failure to follow TDCJ rules and regulations.

Plaintiff complains that Defendants failed to follow TDCJ's rules, policies and procedures resulting in a violation of his due process rights. The failure of TDCJ officials to follow their own regulations was addressed in *Hernandez v. Estelle,* 788 F.2d 1154 (5th Cir. 1986). In *Hernandez,* an inmate initiated a § 1983 suit after TDCJ officials failed to comply with a 48 hour notice requirement when withholding a publication. The court found no constitutional violation and concluded that complete and adequate due process procedures provided after the notice was given was constitutionally adequate. *Id.* at 1158. In part, *Hernandez* relied on the previous opinion of *Vodicka v. Phelps,* 624 F.2d 569 (5th Cir. 1980), wherein "this Court clearly implied that a violation of the regulation on notification would not automatically entitle a prisoner to § 1983 relief." *Hernandez,* 788 F.2d at 1158.

Similarly, in *Samford v. Dretke,* 562 F.3d 674, 681 (5th Cir. 2009), the inmate challenged the enforcement of the prison's "negative mail list" that excluded mail to and from the inmate to his minor sons.  Samford also argued that the TDCJ failed to follow its own procedures arguing that TDCJ policy prohibited including children on a parent-inmate's negative mail list and that rejected mail must be returned to the inmate.  562 F.3d at 681.  The Court rejected those arguments noting that the prison's failure to follow its own policies is not sufficient to state a civil rights claim.  *Id.  See also Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process if constitutional minima are nevertheless met).

To the extent Plaintiff contends that Defendants failed to follow the various TDCJ rules, policies and procedures, those allegations fail to state a cognizable constitutional violation.  As such, these claims must be dismissed for failure to state a claim and/or as frivolous.

### J.    Unconstitutional conditions of confinement.

Plaintiff claims that, after being found guilty of possession of contraband, he went before a Unit Classification Committee and was further punished because he was assigned to disciplinary housing which is stricter than his previous classification and devoid of privileges such as recreation, telephone, visitation, and commissary.

As discussed previously, Plaintiff's challenges to his disciplinary conviction must be brought in a habeas corpus proceeding.  Moreover, to the extent he complains about the loss of privileges, he does not state a due process claim because due process protections are

generally limited to freedom from restraints that impose atypical and significant hardships in relation to the ordinary incidents of prison life. *Sandin,* 515 U.S. at 484.

To the extent Plaintiff is attempting to claim that loss of privileges equals an Eighth Amendment violation, he fails to establish that the change in his classification and the resulting conditions are so harsh as to constitute cruel and unusual punishment that shocks the conscience under contemporary standards. *See Rhodes v. Chapman,* 452 U.S. 337, 345-48 (1981) (Eighth Amendment prohibits conditions that involve the unnecessary and wanton infliction of pain). Nowhere does Plaintiff allege that his current living conditions cause him unnecessary pain or suffering. There is no Eighth Amendment violation.

### K.   Violations of Texas state law.

Plaintiff is suing Defendants for allegedly violating the Texas Penal Code under the following sections: (1) § 37.10, tampering with governmental records; (2) § 39.02, abuse of official capacity; (3) § 39.03, official oppression; (4) § 39.04, violation of the civil rights of a person in custody; and (5) § 7.02, criminal responsibility for the conduct of another. (D.E. 16, §§ 138-154). However, the Texas Penal Code does not create a private cause of action. *Aguilar v. Chastain,* 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ, ref'd). In *Aguilar,* the TDCJ plaintiff sued a guard under §§ 39.01, 39.02, and 39.03 of the Texas Penal Code complaining that the officer had abused his official capacity and violated the plaintiff's constitutional rights of a person in custody. *Aguilar,* 923 S.W.2d at 745. The Tyler Court of Appeals held that "the Penal Code does not create private causes of action, and a victim does not have standing to participate in a criminal proceeding." *Id.* Thus, Plaintiff's claims

under the Texas Penal Code are without merit and accordingly, are dismissed with prejudice.

      **L.**     **Violations of state law.**

      Plaintiff is charging Ms. Moore and Captain Gonzales with acts of slander and defamation. (D.E. 1, § 114). Defamation is a tort under Texas law. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (reciting the elements of a defamation claim under Texas law). It is well established that there is no constitutional right to be free from defamation or slander. *See Paul v. Davis,* 424 U.S.693 (1976)(recognizing that, while a State may protect against injury to reputation by virtue of its tort law, a person's reputation does not implicate a "liberty" or "property" interest of the sort protected by the Due Process Clause). Thus, libel and slander are not cognizable under 42 U.S.C. § 1983 because a defamation claim does not involve the deprivation of any rights, privileges or immunities which are secured by the Constitution or laws of the United States. See *Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980); *see also Mowbray v. Cameron County, Tex.,* 274 F.3d 269, 277 (5th Cir. 2001) (holding that allegations of slander by a former prisoner, resulting in public humiliation, scorn, and ridicule, did not state a claim under 42 U.S.C. § 1983); *Castillo v. Bowles,* 687 F. Supp. 277, 282 (N.D. Tex. 1988) (dismissing an inmate's defamation claim against jail guards because, even if his allegations were true, he only alleged harm to his reputation, which is not a protected by the Constitution) (citing *White v. Thomas,* 660 F.2d 680, 684 (5th Cir. 1981), *cert. denied*, 455 U.S. 1027 (1982) (citation omitted). To the extent Plaintiff alleges that he was defamed by Defendants, he fails to state

a cognizable § 1983 claim.   The slander and defamation claims are dismissed without prejudice.

### M.   Criminal responsibility for the conduct of another.

Plaintiff maintains that no UCC-1s were entered as evidence at his disciplinary hearing to support the charge that he had filed false financing statements.   He claims that, despite this lack of physical evidence, Warden Putnam, Regional Director Chapa, and the Unit Classification Committee all affirmed Captain Gonzales' finding of guilty, because they failed to conduct any independent investigation of the evidence but just blindly accepting the charges filed by Ms. Moore.   As discussed above, Plaintiff's challenges to his disciplinary hearing are only cognizable in a habeas corpus proceeding.

### V.   Conclusion.

The confiscated documents submitted under seal at D.E. 19 demonstrate that Plaintiff had prepared documents to participate in a fraudulent financial scheme.   On April 14, 2015, Inmate Hodson's cell was searched and financial documents, U.C.C. filing instructions, sovereign citizen instructions, and other documents considered contraband by the TDCJ were seized from Inmate Hodson, many of the documents had Plaintiff's name typed or printed thereon, and on April 15, 2015, he was charged with a disciplinary case by Ms. Moore.   A disciplinary hearing was held on April 20, 2015 at which Plaintiff was represented by counsel substitute, and he was found guilty as charged.   Neither Ms. Moore nor Captain Gonzales sat on the Unit Classification Committee that downgraded Plaintiff's custody level based on his disciplinary conviction.   His disciplinary conviction was affirmed at Step 1 and Step 2 by Warden Putnam and Director Chapa.

Plaintiff has not had the disciplinary conviction set aside, and until he does so, his claims challenging that conviction are barred by *Heck*.  Accordingly, the Court lacks subject matter jurisdiction and dismissal is appropriate pursuant to Rule 12(b)(1), Fed. R. Civ. P., and Plaintiff's pleadings fail to state cognizable claims such that dismissal is appropriate pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Defendants' motion to dismiss (D.E. 15) is hereby granted, and all pending motions are denied.[4]   Plaintiff's slander and defamation claims are dismissed without prejudice so that Plaintiff is free to file such claims in state court.

ORDERED this 4th day of October, 2016.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

---

[4] Defendants had sought a motion for protection to be excused from turning over to Plaintiff during initial disclosures the confiscated documents that form the basis of this lawsuit.  (D.E. 17).  With this Order, Defendants need not produce any documents to Plaintiff.